UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMARA OWENS,                              Case No. 09-10267

        Plaintiff,                     Arthur J. Tarnow
v.                                         United States District Judge

COMMISSIONER OF                            Michael Hluchaniuk
SOCIAL SECURITY,                           United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 15)**

## I.      PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On January 23, 2009, plaintiff filed the instant suit seeking judicial review of
the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant
to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Arthur J.
Tarnow referred this matter to the undersigned for the purpose of reviewing the
Commissioner's decision denying plaintiff's claim for a period of disability
insurance and supplemental security income benefits. (Dkt. 2). This matter is
currently before the Court on cross-motions for summary judgment. (Dkt. 12, 15).

B.     Administrative Proceedings

Plaintiff filed the instant claims on April 27, 2004, alleging that she became unable to work on January 1, 1994.  (Dkt. 6, Tr. at 64).  She subsequently amended her onset date to June 13, 2003.  (Dkt. 6, Tr. at 425).  The claim was initially disapproved by the Commissioner on July 23, 2004.  (Dkt. 6, Tr. at 80-83).  Plaintiff requested a hearing and on October 5, 2006, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Joel G. Fina, who considered the case *de novo*.  In a decision by the Appeals Council dated February 21, 2007, the ALJ found that plaintiff was not disabled.  (Dkt. 6, Tr. at 13-25).  Plaintiff requested a review of this decision on March 4, 2007.  (Dkt. 6, Tr. at 11).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC- 1, 2, Dkt. 6, Tr. at 373-378), the Appeals Council, on November 25, 2008, denied plaintiff's request for review.  (Dkt. 6, Tr. at 5-8); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff was not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. ALJ Findings

Plaintiff was 31years of age at the time of the most recent administrative hearing. (Dkt. 6, Tr. at 428). Plaintiff's relevant work history included approximately 6 years as an assembler, a postal carrier, a stock person, and a hairstylist. (Dkt. 6, Tr. at 89-90). In denying plaintiff's claims, defendant Commissioner considered degenerative joint disease of the right knee, bilateral carpal tunnel syndrome, degenerative disc disease of the cervical spine, a bipolar disorder, and a post traumatic stress disorder as possible bases of disability. (Dkt. 6, Tr. at 47).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since September 28, 2000. (Dkt. 6, Tr. at 47). At step two, the ALJ found that plaintiff's impairments were not "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  *Id.*  At step four,

the ALJ found that plaintiff had no past relevant work.  *Id.*  The ALJ determined

that plaintiff had the following residual functional capacity:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to lift 15 pounds.  She should not
> push or pull. She cannot perform work that requires
> climbing, kneeling, crouching, crawling or prolonged
> standing or walking. She cannot perform forceful,
> sustained gripping, grasping or repetitive wrist movement
> with the right hand.  She cannot perform overhead work;
> work that involves rapid or repetitive flexion, extension
> or rotation of the neck; or work that involves maintaining
> the neck in a flexed, extended or rotated position more
> than momentarily.  The claimant is limited to performing
> simple, repetitive work.

 (Tr. at 19).  At step five, the ALJ denied plaintiff benefits because plaintiff could

perform a significant number of jobs available in the national economy.  *Id.*

B.     Plaintiff's Motion for Summary Judgment

According to plaintiff, there was both new and additional evidence in the

instant case that was not part of the record before ALJ Sobrino and there have been

changed circumstances that would provide a basis for a different finding.

Almost one month after ALJ Sobrino's denial in 2003, plaintiff underwent an MRI

of the lumbosacral spine for low back pain radiating into the lower extremities. The

MRI showed "central broad-based disc herniation at the L5-S1 level, flattening the

thecal sac and appearing to touch the S1 nerve roots [bilaterally]." (Tr. 182).

Plaintiff argues that such a radiographic finding would account for plaintiff's symptoms of low back pain radiating into the lower extremities. And, plaintiff points out that three years after ALJ Sobrino's denial, an x-ray of the left knee revealed extensive degenerative changes within the left knee, along with an old fracture of the tibial tuberosity, and a small amount of joint effusion. (Tr. 191). Plaintiff testified at the hearing that she has problems with both knees. (Tr. 455-456). Thus, based on the above medical records and plaintiff's complaints, she asserts that there are two new and additional severe impairments of degenerative disc disease of the lumbar spine and degenerative joint disease of the left knee.

Plaintiff also argues that there have been changed circumstances in relation to plaintiff's psychiatric condition. ALJ Sobrino discussed in her 2003 denial a consultative examination in 2001 by Dr. Balunas who diagnosed "major depressive disorder, single episode, and moderate. He assigned a global assessment of functioning [GAF] at 60, indicating mild to moderate symptoms." (Tr. 43-44). In connection with the current claim, plaintiff underwent another psychiatric consultative examination in June 2004. She was diagnosed with a chronic pain disorder associated with both psychological factors and a general medical condition. Plaintiff was assessed a GAF of 50. Her prognosis was considered guarded if her physical complaints do not improve. (Tr. 139-140) Plaintiff attaches to her motion for summary judgment additional medical evidence purporting to

show that her physical complaints did not improve, as shown by the surgery in August 2008 for the disc herniation and disk disease at L5-S1. Thus, according to plaintiff, there was clearly a change in her mental impairments.

Finally, plaintiff argues that the ALJ did not properly evaluate plaintiff's impairments in the hypothetical question and, therefore, the hypothetical is flawed. According to plaintiff, the ALJ never discussed or evaluated the Mental RFC Assessment form where the agency doctor opined that plaintiff suffered from moderate difficulties in maintaining social functioning. (Tr. 156). This limitation is also greater than that found by ALJ Sobrino in her 2003 denial. (Tr. 45). At the hearing, the VE was asked two hypotheticals that dealt with mental impairments and both of those led the VE to testify that work would be precluded. (Tr. 475) These hypotheticals were based largely on the Medical Source Statement completed by plaintiff's treating therapist, who also completed a letter outlining her diagnosis and treatment. (Tr. 330, 372).

C.    Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ thoroughly considered the evidence since the prior ALJ's decision of June 12, 2003, and reasonably concluded that there was no significant change in plaintiff's mental or physical conditions, thus her RFC remained unchanged from the prior ALJ's decision (Tr. 23). In his decision, ALJ Fina discussed the MRI that plaintiff refers to, but also

discussed clinical examination findings from about 1 year after the MRI which indicated that, although plaintiff had some tenderness of the lumbosacral spine, she was able to ambulate normally without any aid. (Tr. 21, 142). In addition, plaintiff was able to get on and off the examination table without any difficulty (Tr. 142). On neurological examination, plaintiff had no motor or sensory deficits, and she had normal reflexes and coordination. (Tr. 142). As such, the Commissioner argues, the ALJ reasonably determined MRI did not provide a basis to find that plaintiff's RFC had changed since June 2003.

With regard to the evidence cited by plaintiff relating to degenerative changes and a small amount of joint effusion in her left knee (Tr. 191), the evidence during the relevant period demonstrated that plaintiff's knee range of motion was only mildly to moderately limited. (Tr. 145). Further, it was noted that plaintiff's right knee joint was more affected than her left knee. (Tr. 142). Thus, the Commissioner asserts that the evidence does not suggest that plaintiff's left knee problem would require greater limitations than the ALJ already incorporated in his RFC finding due to her right knee problems. To the extent that plaintiff demonstrated difficulty squatting and recovering due to knee pain, the Commissioner argues that the ALJ found plaintiff could not perform any work that required kneeling, crouching, crawling, prolonged standing, or prolonged walking. (Tr. 19). According to the Commissioner, plaintiff does not cite to any record

evidence indicating why the limitations provided by the ALJ would not fully cover any restrictions plaintiff would have due to a left knee condition.

The Commissioner also urges the Court to conclude that the ALJ correctly concluded that the findings in the June 2004 mental evaluation, did not demonstrate greater mental limitations than found by ALJ Fina. According to the Commissioner, the ALJ thoroughly considered the June 2004 consultative examination, in addition to the other record evidence when making his RFC finding. (Tr. 21-22). Notably, the evaluators in June 2004 reported that, "[t]hroughout the evaluation, it appeared that [Plaintiff] was resistant to give specific information. She was irritated about testing procedures. She gave limited eye contact and was guarded. She reported an adequate level of self esteem. Her motor activity appeared normal. She could not describe her symptoms thoroughly or specifically. Insight is limited." (Tr. 138). The ALJ also considered that, despite her alleged mental limitations, plaintiff was able to watch television, read books, and visit with family. (Tr. 23, 138, 448-49). Based on the consultative examiners' report in addition to plaintiff's statements, the Commissioner asserts that the ALJ reasonably found that plaintiff had only mild limitations in her daily activities and social functioning. (Tr. 23). The ALJ also determined that plaintiff had moderate limitations in maintaining concentration, persistence, and pace, and

he limited plaintiff to only simple, repetitive work. (Tr. 19, 23). The Commissioner asserts that these limits were supported by the record evidence.

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

      B.     <u>Governing Law</u>

          1.     Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.     Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for

the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

B.    Analysis and Conclusions

Generally, principles of *res judicata* require that the administration be bound by this decision unless a change of circumstances is proved on a subsequent application. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding... ." The Sixth Circuit applies collateral estoppel to "preclude reconsideration by a subsequent ALJ of factual findings that have

already been decided by a prior ALJ when there are no changed circumstances requiring review." *Brewster v. Barnhart*, 145 Fed.Appx. 542, 546 (6th Cir. 2005).

Under *Drummond*, a change in the period of disability alleged does not preclude the application of *res judicata*. *Slick v. Comm'r of Soc. Sec.*, 2009 WL 136890, *4, citing, *Drummond*, 126 F.3d at 839. The change in the alleged disability period does not affect the application of *res judicata* where the issue (whether plaintiff's condition disables her and/or to what degree), is the same. *Slick*, at *4. Plaintiff must show that circumstances have changed since the first hearing before the ALJ "by presenting new and material evidence of deterioration." *Id*. at *5.

The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217

Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ found that plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The ALJ also found that plaintiff had not shown a change in circumstance from the 2003 decision.

As noted by the ALJ, an MRI of the lumbar spine on July 13, 2003 revealed a central broad-based disc herniation at the L5-SI level, flattening the thecal sac and appearing to touch the SI nerve roots. The ALJ found, however, that the medical evidence of record established that plaintiff had a history of carpal tunnel syndrome and degenerative disc disease of the cervical and lumbar spine that predated the current alleged onset date of June 13, 2003. *See e.g.* June 12, 2003 Decision, Tr. at 44 ("Objective medical evidence demonstrates that degenerative joint disease of the right knee, bilateral carpal tunnel syndrome, degenerative disc disease of the cervical spine, a bipolar disorder, and a post traumatic stress disorder impose significant limitations upon the claimant's ability to work. The claimant has severe impairments, as that term is defined in the applicable

regulations."). On July 6, 2004, S. Sayyid, M.D., examined plaintiff at the request of the State agency. She complained of bilateral carpal tunnel syndrome, pain in the neck and back and both knees. She reported that she had surgery on the right knee, had hypertension and has also been treated for anxiety and depression. On examination, plaintiff had no neurological deficits. There was some tenderness of the lower cervical spine as well as the lumbosacral spine and positive tests consistent with carpal tunnel syndrome. She was able to ambulate normally without any aid, but had difficulty walking on her heels and toes, squatting and recovering because of pain in her knees. Her range of motion of the lumbar spine and the knees was mildly to moderately limited. Dr. Sayyid concluded that plaintiff's examination was consistent with degenerative disc disease and carpal tunnel syndrome worse on the right than the left.

On June 3, 2004, the claimant was examined by Marianne Goergen, Psy.D., at the request of the State agency. Plaintiff's complaints centered around her physical problems and what she described as constant pain. She reported that she was irritated easily because of her pain. She was vague about her sleeping habits. Dr. Goergen's impression was that of pain disorder associated with both psychological features and a general medical condition and was chronic. Dr. Goergen assigned a GAF of 50, indicating a moderate impairment of plaintiff's ability to function on a day to day basis.

On August 17, 2004, well after the claimed onset day, plaintiff was playing basketball and sprained her ankle. On January 7, 2005, plaintiff fell through four stairs and sustained pain and bruises. She was diagnosed with a shoulder sprain. She was seen again on August 7, 2005. Plaintiff was seen in the emergency room of Genesys Regional Medical Center in late 2005 and early 2006 for complaints of shoulder and back pain. Plaintiff was prescribed physical therapy throughout 2005. She began physical therapy on January 4, 2005. Plaintiff was seen on 14 occasions during a three month period. The records again indicate that she failed to show for many of her sessions. At discharge, the therapist noted that plaintiff had a fair to good comprehension of what her home exercise program required. She was discharged on April 19, 2005, having partially met her goals. Plaintiff testified at the hearing that the reason she was unable to get to her therapy sessions was because she either did not have transportation or she was in too much pain.

Plaintiff's former primary care physician, A. Arif, M.D., submitted office notes covering the period October 2005 through May 2006. These records are consistent with plaintiff's complaints of back and neck pain. On October 28, 2005, plaintiff had an MRl of the left shoulder that was consistent with bursitis. The office records of Dr. Arif indicated that plaintiff was seen about once every two months. Plaintiff had intermittent muscle spasms, tenderness and limitation of range of motion of the lumbar spine, cervical spine and the left shoulder. There

was no indication of any neurological deficits. Plaintiff was maintained on Naprosyn for pain.

Plaintiff testified that she has been treated by a "Dr. Duncan" for her depression and/or anxiety. As noted by the ALJ, Mr. Duncan is plaintiff's therapist and is a social worker, not a doctor. Plaintiff submitted a medical source statement from Mr. Duncan dated September 7, 2006 indicating that she had been diagnosed with bipolar disorder. Further, he opined that the claimant was markedly or extremely limited in all areas of functioning including her ability to relate and interact with supervisors and co-workers; understand and carry out complex, or technical job instructions; deal with the public, understand and carry out one or two step instructions; withstand the stress and pressures of an eight hour work day and day to day activity; and her ability to handle funds. After the hearing, plaintiff submitted a statement from Mr. Duncan dated February 6, 2007. Mr. Duncan reported that he has treated plaintiff about twice a month since February 2, 2003. He noted that her presenting problems were diminished interest in all, or almost all activities, weight and appetite disturbance, fatigue or loss of energy and difficulty with concentration. The ALJ gave little weight to Mr. Duncan's medical source statement for several reasons. First, the ALJ noted that because Mr. Duncan is a social worker and not a doctor, and while his opinion must be considered, he is not a competent medical source as that term is defined by

20 C.F.R. § 404.1527.  Second, the ALJ found that Mr. Duncan's opinion was contrary to the evidence of record as a whole.  In particular, plaintiff testified that when she worked she got along with her supervisors and co-workers; that she gets along with family and lives with and cares for three minor children; and that she is able to keep track of and pay her household bills.  While she may have difficulty carrying out complex or technical instructions, the ALJ concluded that there was no indication that she would not be able to carry out simple, routine, repetitive tasks, based on her ability to watch TV, read books, and visit with family and friends.  The ALJ concluded that the record as a whole supports a finding that plaintiff's activities of daily living were only mildly impaired by her psychological problems.  He also concluded that they were more significantly limited by her physical problems.  The ALJ concluded that plaintiff's ability to maintain social functioning was also only mildly limited by her alleged bi-polar disorder and ability to maintain concentration, persistence and pace were moderately impaired by her bi-polar disorder.  He found no indication of any episodes of decompensation.  The ALJ concluded that plaintiff did not have a disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would predict to cause her to decompensate and she did not have a history of an inability to function outside of a highly supportive living arrangement for a year or longer.

As noted by the ALJ, where a final decision after a hearing on a prior disability claim contains a finding of a claimant's residual functional capacity, the administrative law judge may not make a different finding in adjudicating a subsequent disability claim (with an unadjudicated period arising under the same title of the Act as the prior claim) unless new and additional evidence or changed circumstances provide a basis for a different finding. In view of the additional medical evidence and plaintiff's testimony about her condition, the ALJ concluded that there was no basis to find that plaintiff's residual functional capacity has changed since that time. As for the opinion evidence, the ALJ gave substantial weight to the opinion of the State agency examiners who found that plaintiff could perform a restricted range of light work consistent with the residual functional capacity found above.

The undersigned suggests that the ALJ's decision that plaintiff did not demonstrate a change in her functional capacity is based on substantial evidence. Even if plaintiff is correct that her conditions changed or worsened, that does not necessarily mean that her RFC changed. In this case, there is no such evidence and the ALJ's RFC finding was entirely consistent with the restrictions imposed by her treating physicians. Indeed, plaintiff's claim of additional restrictions and limitations beyond those imposed by her treating physician seems based on the mere existence of her condition, rather than on any resulting impairments or

specific restrictions. While the record reveals that plaintiff's condition resulted in several limitations, as found by the ALJ, the mere existence of a particular condition is insufficient to establish an inability to work. *See e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms."). Moreover, plaintiff does not offer any opinion from a treating physician that she was more physically limited than as found by the ALJ. *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability."). To the extent that plaintiff points to other subjective limitations, such subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence."

*Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, *10 (E.D. Mich. 2009), citing, 20

C.F.R. § 404.1529(a), *Young v. Secretary*, 925 F.2d 146, 150-51 (6th Cir. 1990);

*Duncan v. Sec'y*, 801 F.2d 847, 852 (6th Cir. 1986). In this case, there is no such

evidence and the ALJ's RFC finding was entirely consistent medical evidence.

Given that a severe impairment does not equate to disability, the

undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations

to be only partially credible is supported by the substantial evidence in the record

and properly incorporated into the RFC finding. The ALJ's obligation to assess

credibility extends to the claimant's subjective complaints such that the ALJ "can

present a hypothetical to the VE on the basis of his own assessment if he

reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at

476. When weighing credibility, an ALJ may give less weight to the testimony of

interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a

trier of fact is not required to ignore incentives in resolving issues of credibility.");

*Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). This

obligation to assess credibility extends to the claimant's subjective complaints such

that the ALJ "can present a hypothetical to the VE on the basis of his own

assessment if he reasonably deems the claimant's testimony to be inaccurate."

*Jones*, 336 F.3d at 476.

In light of the medical and other evidence discussed above, I suggest that the VE's opinion is consistent with the findings of treating physicians and mental health professionals, and can properly be considered substantial evidence. Thus, the undersigned concludes that there is an insufficient basis on this record to overturn the ALJ's credibility determination and that the hypothetical relied on properly reflected plaintiff's limitations.

4. Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## V. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff was not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474

U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th

Cir. 1981).  Filing objections that raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401

(6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be

served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Administrative Order

09-AO-042.  The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc.  If the Court determines that any objections are

without merit, it may rule without awaiting the response.

Date:  February 26, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 26, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Mikel E. Lupisella, William L. Woodard, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov
